

U.S. DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
FILED

MAR 2 8 2011

CLERK, U.S. DISTRICT COURT

By _____
        Deputy

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

GAY WILKINS, §
    PLAINTIFF, §
 §
v. § CIVIL ACTION NO. 4:10-CV-160-A
 §
MICHAEL J. ASTRUE, §
COMMISSIONER OF SOCIAL SECURITY, §
    DEFENDANT.     `` §

## FINDINGS, CONCLUSIONS AND RECOMMENDATION
## OF THE UNITED STATES MAGISTRATE JUDGE
## AND
## NOTICE AND ORDER

This case was referred to the United States Magistrate Judge pursuant to the provisions of

Title 28, United States Code, Section 636(b). The Findings, Conclusions and Recommendation

of the United States Magistrate Judge are as follows:

### FINDINGS AND CONCLUSIONS

### I.    STATEMENT OF THE CASE

Plaintiff Gay Wilkins ("Wilkins") filed this action pursuant to Sections 405(g) and

1383(c)(3) of Title 42 of the United States Code for judicial review of a final decision of the

Commissioner of Social Security denying her claim for supplemental security income ("SSI")

under Title XVI of the Social Security Act ("SSA"). In May 1994, Wilkins applied for SSI.

(Transcript ("Tr.") 221-23.) Her application was denied initially and on reconsideration. (Tr.

210-12, 216-19.) She sought review from an Administrative Law Judge ("ALJ"); however, her

request was dismissed as being untimely. (Tr. 174-75, 208.) In October 1995, Wilkins again

applied for SSI. (Tr. 19, 166-68.) Her application was denied initially and on reconsideration.

(Tr. 19, 139-41, 145-50.) An ALJ held a hearing and subsequently issued a decision on March 8, 1997 that Wilkins was not disabled. (Tr. 19, 39-72, 461-76.) On March 19, 1999, the Appeals Council vacated the ALJ's decision and remanded the case for further proceedings. (Tr. 19, 498-501.) The ALJ held another hearing and issued another unfavorable decision on October 19, 1999. (Tr. 19, 73-104, 581-95.) The Appeals Council, on April 26, 2002, again vacated the ALJ's decision and remanded the case for further proceedings. (Tr. 19, 604-06.) The ALJ held another hearing and again issued an unfavorable decision on March 28, 2003. (Tr. 19, 105-17, 837-51.) The Appeals Council vacated this decision on November 2, 2005 and remanded the case for further proceedings. (Tr. 19, 869-71.) A different ALJ held another hearing on August 8, 2007 and issued another decision on December 19, 2007 that Wilkins was not disabled. (Tr. 16-38, 118-38.) Wilkins filed a written request for review, and the Appeals Council denied her request for review, leaving the ALJ's decision to stand as the final decision of the Commissioner. (Tr. 9-11, 14-18.)

## II. STANDARD OF REVIEW

SSI benefits are governed by Title XVI, 42 U.S.C. § 1381 *et seq.*, of the SSA and numerous regulatory provisions. *See* 20 C.F.R. Pt. 416 (SSI). The SSA defines a disability as a medically determinable physical or mental impairment lasting at least twelve months that prevents the claimant from engaging in substantial gainful activity. 42 U.S.C. §§ 423(d), 1382c(a)(3)(A); *McQueen v. Apfel*, 168 F.3d 152, 154 (5th Cir. 1999). To determine whether a claimant is disabled, and thus entitled to disability benefits, a five-step analysis is employed. 20 C.F.R. § 416.920. First, the claimant must not be presently working at any substantial gainful activity. Substantial gainful activity is defined as work activity involving the use of significant physical or

mental abilities for pay or profit. 20 C.F.R. § 416.972. Second, the claimant must have an impairment or combination of impairments that is severe. 20 C.F.R. § 416.920(c); *Stone v. Heckler*, 752 F.2d 1099, 1101 (5th Cir. 1985), *cited in Loza v. Apfel*, 219 F.3d 378, 392 (5th Cir. 2000). Third, disability will be found if the impairment or combination of impairments meets or equals an impairment listed in the Listing of Impairments ("Listing"), 20 C.F.R. Pt. 404, Subpt. P, App. 1. 20 C.F.R. § 416.920(d). Fourth, if disability cannot be found on the basis of the claimant's medical status alone, the impairment or impairments must prevent the claimant from returning to his past relevant work. *Id.* § 416.920(e). And fifth, the impairment must prevent the claimant from doing any work, considering the claimant's residual functional capacity, age, education, and past work experience. *Id.* § 416.920(f); *Crowley v. Apfel,* 197 F.3d 194, 197-98 (5th Cir.1999). At steps one through four, the burden of proof rests upon the claimant to show that he is disabled. *Crowley*, 197 F.3d at 198. If the claimant satisfies this responsibility, the burden shifts to the Commissioner to show that there is other gainful employment the claimant is capable of performing in spite of his existing impairments. *Id.*

A denial of disability benefits is reviewed only to determine whether the Commissioner applied the correct legal standards and whether the decision is supported by substantial evidence in the record as a whole. *Leggett v. Chater*, 67 F.3d 558, 564 (5th Cir. 1995); *Hollis v. Bowen*, 837 F.2d 1378, 1382 (5th Cir. 1988). Substantial evidence is such relevant evidence as a responsible mind might accept to support a conclusion. *Boyd v. Apfel*, 239 F.3d 698, 704 (5th Cir. 2001). It is more than a mere scintilla, but less than a preponderance. *Id.* A finding of no substantial evidence is appropriate only if no credible evidentiary choices or medical findings support the decision. *Id.* This Court may neither reweigh the evidence in the record nor

substitute its judgment for the Commissioner's, but will carefully scrutinize the record to determine if the evidence is present. *Harris v. Apfel*, 209 F.3d 413, 417 (5th Cir. 2000); *Hollis*, 837 F.2d at 1383.

### III. ISSUES[1]

1. Whether the ALJ properly considered the combined effects of Wilkins' physical and mental impairments; and

2. Whether the ALJ erred in failing to give controlling weight to the opinion of Wilkins' treating psychologist, Susan Franks, Ph.D. ("Franks").

3. Whether the ALJ breached his duty to develop the record by failing to call a Medical Expert ("ME") regarding Wilkins' fibromyalgia and her ability to handle work stress.

### IV. ADMINISTRATIVE RECORD AND ALJ DECISION

The ALJ, in his December 19, 2007 decision, stated that Wilkins had not engaged in any substantial gainful activity after October 31, 1995. (Tr. 20.) He further found that Wilkins had the following "'severe' combination of impairments:"

> Fibromyalgia, hepatitis C, gastroesophageal reflux disease, recurrent kidney stones, history of urinary urgency, non-ulcerative dyspepsia, history of dysphagia, migraine headaches, temporomandibular joint disease (TMJ), major depression, early onset dysthymic disorder, personality disorder not otherwise specified, rule out avoidant personality disorder, post-traumatic stress disorder, mood disorder, pain disorder, cognitive disorder not otherwise specified, and borderline intellectual functioning.

(*Id.*) Next, the ALJ held that none of Wilkins' impairments or combination of impairments met or equaled the severity of any impairment in the Listing. (Tr. 21.) As to Wilkins' residual functional capacity ("RFC"), the ALJ opined that Wilkins could:

---

[1] The Court notes that in her brief, Wilkins sets forth one main issue, followed by two interrelated issues. The Court, for clarity purposes, will address each issue separately. (Pl.'s Br. at i, 10, 12, 19.)

Lift and carry 20 pounds occasionally and 10 pounds frequently; sit, stand, and walk (individually or in combination) throughout an 8-hour workday; and otherwise perform the full range of light work,[2] except: she can only occasionally stoop, kneel, crouch, crawl, or climb ladders, scaffolds, or ropes; she can perform jobs involving detailed, but not complex, instructions; and she can have no more than superficial contact with the public and co-workers.

(Tr. 21 (footnote added).)

The ALJ opined, based on his RFC assessment, that Wilkins was not able to perform her past relevant work. (Tr. 36.) The ALJ found, however, that Wilkins was able to perform a number of jobs that existed in significant numbers in the national economy; thus, she was not disabled. (Tr. 36-37.)

## V. DISCUSSION

### A. Consideration of Combined Effects of Physical and Mental Impairments

Wilkins argues that the ALJ did not properly consider the combined effects of her physical and mental impairments. (Pl.'s Br. at 10.) "[A]n individual's combined impairments can prohibit substantial gainful activity." *Owens v. Heckler*, 770 F.2d 1276, 1282 (5th Cir. 1985). When determining whether a claimant's physical or mental impairments are of a sufficient medical severity that such impairments could be the basis of eligibility for disability benefits, the ALJ is required to consider the combined effect of all of the claimant's impairments

---

[2] Light work is defined as follows:

Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities.

20 C.F.R. § 416.967(b).

without regard to whether any of such impairments, if considered separately, would be of sufficient severity. 20 C.F.R. § 416.923; *Loza v. Apfel*, 219 F.3d 378, 393 (5ᵗʰ Cir. 2000). An ALJ may discuss each impairment individually and then state that he considered the combined effect of the impairments to satisfy this mandate, so long as the ALJ's RFC assessment considers all of the claimant's impairments and the assessment is supported by substantial evidence. *See, e.g.*, *Owens*, 770 F.2d at 1282.[3]

RFC is what an individual can still do despite his limitations.[4] SSR 96-8p, 1996 WL 374184, at *2 (S.S.A. July 2, 1996). It reflects the individual's maximum remaining ability to do sustained work activity in an ordinary work setting on a regular and continuing basis. *Id. See Myers v. Apfel*, 23 8F.3d 617, 620 (5th Cir. 2001). A regular and continuing basis is an eight-hour day, five days a week, or an equivalent schedule. *Id.* RFC is not the least an individual can do, but the most. SSR 96-8p, 1996 WL 374184, at *2. The RFC assessment is a function-by-

---

[3] In *Owens*, the claimant suffered from a back injury, heart condition, high blood pressure, severe pain in his lower back, shortness of breath, and fatigue. *Owens*, 770 F.3d at 1278-79. The ALJ found that Owens had the RFC to perform light work and was not disabled as he could perform his past relevant work. The claimant argued, *inter alia*, that the ALJ failed to consider the combined effects of his impairments because the ALJ evaluated each impairment individually. *Id.* at 1282. The Fifth Circuit disagreed, noting that the ALJ, in his decision, stated, "[C]laimant's impairments, taken singly or *in combination*, do not meet or equal an impairment as defined in the Listing of Impairments." *Owens*, 770 F.2d at 1282 (emphasis in original). The Fifth Circuit held that the ALJ's statement was not a "rote statement" because there was substantial evidence to support the ALJ's disability determination.

[4] The Commissioner's analysis at steps four and five of the disability evaluation process is based on the assessment of the claimant's RFC. *Perez v. Barnhart*, 415 F.3d 457, 461-62 (5th Cir. 2005). The Commissioner assesses the RFC before proceeding from step three to step four. *Id.*

function assessment, with both exertional and nonexertional[5] factors to be considered, and is based upon all of the relevant evidence in the case record. *Id.* at \*3-5. The responsibility for determining a claimant's RFC lies with the ALJ. *See Villa v. Sullivan*, 895 F.2d 1019, 1023 (5th Cir. 1990). The ALJ must discuss the claimant's ability to perform sustained work activity on a regular and continuing basis and resolve any inconsistencies in the evidence. SSR 96-8 p. 1996 WL 374184 at \*7.

Wilkins claims that the ALJ, in assessing her RFC, "committed reversible error by separating [her] physical and mental impairments, discussing each ground independent of the other." (Pl.'s Br. at 11.) Wilkins argues that the ALJ, pursuant to 20 C.F.R. § 416.945(e)[6] and SSR 86-8,[7] must "analyze both the disabling effect of each of the claimant's ailments **and the**

---

[5] Exertional capacity addresses an individual's ability "to perform each of seven strength demands: Sitting, standing, walking, lifting, carrying, pushing, and pulling." SSR 96-8p, 1996 WL 374184, at \*5. Each function must be considered separately, but the final RFC assessment may combine activities. *Id.* Nonexertional capacity "considers all work-related limitations and restrictions that do not depend on an individual's physical strength," including mental limitations. SSR 96-8p, 1996 WL 374184, at \*6.

[6] 20 C.F.R. § 416.945(e) states:

When you have a severe impairment(s), but your symptoms, signs, and laboratory findings do not meet or equal those of a listed impairment in appendix 1 of subpart P of part 404 of this chapter, we will consider the limiting effects of all your impairment(s), even those that are not severe, in determining your residual functional capacity. Pain or other symptoms may cause a limitation of function beyond that which can be determined on the basis of the anatomical, physiological or psychological abnormalities considered alone; *e.g.*, someone with a low back disorder may be fully capable of the physical demands consistent with those of sustained medium work activity, but another person with the same disorder, because of pain, may not be capable of more than the physical demands consistent with those of light work activity on a sustained basis. In assessing the total limiting effects of your impairment(s) and any related symptoms, we will consider all of the medical and nonmedical evidence, including the information described in § 416.929(c).

[7] The relevant portion of SSR 86-8 states:

When assessing the severity of multiple impairments, the adjudicator must evaluate the combined impact of those impairments on an individual's ability to function, rather than assess separately the contribution of each impairment to the restriction of function as if each impairment existed alone. When multiple impairments, considered in combination, would have more than a minimal effect

**combined effect of all of these impairments**" in making a disability determination. (Pl.'s Br. at

11 (emphasis in original).)  In support of this argument, Wilkins states:

> Dr. Franks indicated that Ms. Wilkins' depression stemmed from her
> "high level of concern for the state of her health and bodily dysfunction,"
> characterizing it as "biopsychological, with primary characteristics of low energy,
> little zest, and malaise that are likely a direct feature of her illness and which are
> further complicated by her current emotional state." Dr. Reddy also believed that
> Ms. Wilkins' "persistence and pace" had suffered as a result of "medical
> problems . . . taking a toll on her and compounding the issue is [sic] her
> depression." Finally, Dr. McCabe's diagnoses indicated that he, too, believed her
> depression was related to her fibromyalgia, as well as a pain disorder with
> psychological factors and a medical condition.

(Pl.'s Br. at 12 (footnotes omitted).)

Contrary to Wilkins' arguments, the record reflects that the ALJ did consider the

combined effects of Wilkins' physical and mental impairments and specifically noted that he was

doing so throughout his decision.  To begin with, the ALJ, citing to 20 C.F.R. §§ 416.920(e),

416.945, and SSR 96-8p, noted that "throughout [the] evaluation process **all of the claimant's**

**impairments**, including impairments that are not 'severe,' must be considered."  (Tr. 20

(emphasis added).)  He then found, citing to 20 C.F.R. § 416.920(c), that Wilkins had the

"**'severe' combination**" of the following impairments: 1) fibromyalgia, 2) hepatitis C, 3)

gastroesophageal reflux disease, 4) recurrent kidney stones, 5) history of urinary urgency, 6)

non-ulcerative dyspepsia, 7) history of dysphagia, 8) migraine headaches, 9) temporomandibular

---

on the ability to perform basic work activities, adjudication must continue through the sequential
evaluation process.

SSR 86-8, 1986 WL 68636, at *2 (S.S.A. 1986), superseded by SSR 91-7c, 1991 WL 231791, at *1 (S.S.A. Aug. 1,
1991) (only to the extent the SSR discusses the former procedures used to determine disability in children).

joint disease (TMJ), 10) major depression, 11) early onset dysthymic disorder, 12) personality disorder not otherwise specified, 13) rule out avoidant personality disorder, 14) post-traumatic stress disorder, 15) mood disorder, 16) pain disorder, 17) cognitive disorder not otherwise specified, and 18) borderline intellectual functioning. (Tr. 20.) Next, the ALJ noted that none of Wilkins' impairments or "**combination** of impairments" met or medically equaled any impairment in the listing. (Tr. 21.) Based on an analysis of Wilkins' impairments, the ALJ then assessed Wilkins' RFC. (Tr. 21.)

Although the ALJ divided his analysis of the evidence relating to Wilkins' RFC into two separate parts, one discussing physical and medical impairments and the other discussing mental impairments (*see* Tr. 22-36), the ALJ is not required to undertake a detailed analysis of the combined effect of the impairments so long as the RFC assessment considers all of Wilkins' impairments and is supported by substantial evidence. *See Owens*, 770 F.2d at 1282. In this case, it is clear that the ALJ was aware of all of Wilkins' physical and mental impairments and acknowledged that he had a duty to consider such impairments in combination. Furthermore, the ALJ went through a very extensive review of the medical and other evidence in the record in assessing Wilkins' RFC.[8] In addition, he properly exercised his responsibility as factfinder in weighing the evidence and in choosing to incorporate limitations into his RFC assessment that were most supported by the record. Consequently, the Court concludes that the ALJ properly

---

[8] Specifically, the ALJ relied, *inter alia*, on the following evidence: (1) examinations showing Wilkins had functioned "fairly well overall," had good range of motion and had not exhibited significant neurological deficits; (2) claimant's testimony and medical evidence indicating she could sit, stand, and walk for significant periods at a time; (3) claimant's testimony that she had been able to care for her personal needs and performed a wide variety of daily activities, including cooking, cleaning, shopping, laundry, and caring for children; (4) evidence that her mental condition had substantially improved with treatment; and (5) evidence from Tara Reddy, M.D. ("Reddy"), a consultative psychiatrist, and Wilkins' treating psychiatrists and physicians indicating that she has not exhibited severe cognitive difficulties or borderline intellectual functioning. (Tr. 23-36.)

addressed the combined effects of Wilkins' mental and physical impairments and remand is not required.

## B. <u>Opinion of Treating Psychologist Franks</u>

Wilkins further claims that the ALJ erred when he failed to give controlling weight to the opinion of Franks, Wilkins' treating psychologist, in compliance with the social security regulations. (Pl.'s Br. at 12-13.) Wilkins argues that the ALJ erred by not accepting Franks' opinions regarding Wilkins' "ability to deal with work stresses" and that such a limitation should have been incorporated into the RFC assessment. (Pl.'s Br. at 16-19.) Wilkins claims that Franks' opinion regarding Wilkins' ability to deal with work stress was consistent with the opinions of Reddy and James McCabe, Ph.D. ("McCabe") and, thus, should not have been rejected. (Pl.'s Br. at 16-19.)

Controlling weight is assigned to the opinions of a treating physician if well-supported by medically acceptable clinical and laboratory diagnostic techniques and not inconsistent with other substantial evidence in the record. 20 C.F.R. § 404.1527(d)(2); *Martinez v. Chater*, 64 F.3d 172, 176 (5th Cir. 1995); *Bowman v. Heckler*, 706 F.2d 564, 568 (5th Cir. 1983). However, the determination of disability always remains the province of the ALJ and the ALJ can decrease the weight assigned to a treating physician's opinion for good cause, which includes disregarding statements that are brief and conclusory, unsupported by acceptable diagnostic techniques, or otherwise unsupported by the evidence. *Leggett*, 67 F.3d at 566; *Greenspan v. Shalala*, 38 F.3d 232, 237 (5th Cir. 1994). *See also* 20 C.F.R. § 404.1527(e). Conclusory statements to the effect that the claimant is disabled or unable to work are legal conclusions, not medical opinions, and

are not entitled to any special significance. *See* 20 C.F.R. § 404.1527(e); *see also Frank v. Barnhart*, 326 F.3d 618, 620 (5th Cir. 2003).

In determining that Wilkins had the RFC to perform light work with additional limitations, the ALJ reviewed the opinions of Franks. (Tr. 29-31.) As to Franks' opinions, the ALJ stated:

> I agree with Dr. Franks' conclusion that Ms. Wilkins had problems with her ability to relate to others, but I do not give significant weight to Dr. Franks' opinions that Ms. Wilkins had significant problems to her ability to sustain work and respond to change and stress in a work setting. Such a conclusion is inconsistent with Ms. Wilkins' mental status examinations, activities of daily living, and statements regarding her activities and functioning.

(Tr. 30.) The ALJ also stated:

> In general, Dr. Frank' opinions in [the February 1997 Medical Assessment of Ability to Do Work-Related Activities form] support the above residual functional capacity findings regarding Ms. Wilkins' mental restrictions and that Ms. Wilkins had the ability mentally to work. The opinion that Ms. Wilkins was seriously limited in her ability to perform complex tasks was consistent with the residual functional capacity finding that Ms. Wilkins could perform detailed, but not complex, tasks. However, the opinions that Ms. Wilkins was seriously limited in dealing with work stresses and being reliable were subjective and not supported by the evidence. For example, on several occasions Ms. Wilkins indicated she did many household chores and activities of daily living, including caring for her daughter, babysitting other people's children, and volunteering at her daughter's school. It is doubtful she could have accomplished theses activities if she had the limitations suggested by Dr. Franks. Moreover, Dr. Franks indicated Ms. Wilkins was satisfactory in relating to co-workers, supervisors, and the public; maintaining attention and concentration; understanding, remembering, and carrying out detailed instructions; and behaving in an emotionally stable manner.

(Tr. 31.)

In addition, the ALJ reviewed other evidence in the record, including the following: (1) testimony and evidence from Wilkins regarding her activities of daily living, including that she

11

was able to do household chores, care for her daughter, babysit for her niece, and volunteer at her daughter's school; (2) February and June 1996 opinions from State Agency Medical Consultants indicating that Wilkins had no more than moderate limitations from her depression; (3) treatment notes from Stuart Keller, D.O., Rita Foust, M.A., and University of North Texas Health Science Center at Fort Worth ("NTHSC") showing, in essence, that her depression condition was not deteriorating, and improved with treatment; (4) May 1999 consultative psychological examination in which Reddy diagnosed Wilkins with major depression and opined that she had "good abilities in almost all functional areas," fair abilities to relate to co-workers and to understand, remember, and carry out complex job instructions, and poor ability to deal with work stress; and (5) treatment notes from 2006 and 2007 indicating that her overall functioning was moderate. (Tr. 28-36.)

Based on a review of the foregoing, it is clear that the ALJ accepted the vast majority of Franks' opinions in accordance with the statutes and regulations regarding the treatment of opinions of treating physicians. Wilkins' complaint is that the ALJ should have accepted Franks' opinion that Wilkins was not able to deal with work stresses. However, the ALJ specifically acknowledged that Wilkins had difficulties in dealing with stress as he stated that he was limiting Wilkins to "superficial contact with the public and co-workers because of her history of interpersonal stress and problems." (Tr. 29.) In addition, the ALJ limited Wilkins to jobs involving detailed, but not complex instructions, which would also help to limit job stress. Thus, it appears that the ALJ did implicitly incorporate into the RFC determination, Wilkins' limitation on her ability to handle stress.

Furthermore, the Court is unsure how the ALJ would have incorporated a limitation that Wilkins was unable to handle **any** work stress into the RFC determination as an additional and separate limitation as such a limitation appears to be an opinion that Wilkins is disabled and not able to work. The ALJ, however, is not bound by such an opinion as conclusory statements to the effect that the claimant is disabled or unable to work are legal conclusions, not medical opinions, and are not entitled to any special significance. *See* 20 C.F.R. § 404.1527(e); *see also Frank v. Barnhart*, 326 F.3d 618, 620 (5th Cir. 2003). In addition, such an opinion, as noted by the ALJ, is not consistent with Franks' other opinions that indicated Ms. Wilkins was satisfactory in 1) relating to co-workers, supervisors, and the public; 2) maintaining attention and concentration; 3) understanding, remembering, and carrying out detailed instructions; and 4) behaving in an emotionally stable manner.

As to Wilkins' arguments that Franks' opinion relating to Wilkins' inability to handle work stress was supported by the opinions of Reddy and McCabe, there was other evidence in the record that indicates Wilkins' ability was not so limited, as discussed above. All of the above evidence, taken as a whole, provides "good cause" for not accepting Franks' opinion regarding Wilkins' totally inability to deal with work stresses. Consequently, the Court concludes that the ALJ did not err.

## C. Duty to Develop Record

Wilkins finally claims, in essence, that the ALJ breached his duty to develop the record by failing to call a ME regarding Wilkins' fibromyalgia. (Pl.'s Br. at 19-22.) Wilkins argues that "[d]espite innumerable treatment records documenting Ms. Wilkins' history of fibromyalgia, it

13

was apparent the ALJ did not understand the condition and the medically accepted diagnostic techniques." (Pl.'s Br. at 19.) Wilkins further states:

> All of the doctors called upon to interview, test, and examine Ms. Wilkins' [sic] believed that in a work environment, her response to stress would most likely result in an increase in her pain, and thus limit her ability to effectively perform on a sustained basis. The ALJ's failure to call or use a Medical Expert resulted in missing this important understanding of Ms. Wilkins['] disability.

(Pl.'s Br. at 22.)

The Commissioner, on the other hand, argues that any duty the ALJ had to develop the record had been fulfilled through the testimony of Anne Tuberville, M.D. "Tuberville", a board certified psychiatrist, at the February 18, 2003 hearing before the ALJ. (Def.'s Br. at 13.) The Commissioner claims that Tuberville "specifically testified under oath regarding Wilkins' fibromyalgia and the functional restrictions of such limitations." (*Id.*)

The Fifth Circuit imposes a duty on the ALJ to fully and fairly develop the facts relative to a claim for benefits. *Newton v. Apfel*, 209 F.3d 448, 458 (5th Cir. 2000); *Ripley v. Chater*, 67 F.3d 552, 557 (5th Cir. 1995). When the ALJ fails in this duty, he does not have before him sufficient facts on which to make an informed decision and his decision is not supported by substantial evidence. *Brock v. Chater*, 84 F.3d 726, 728 (5th Cir. 1996); *Kane v. Heckler*, 731 F.2d 1216, 1219 (5th Cir. 1984). "Nonetheless, reversal is appropriate only if the claimant shows that he was prejudiced as a result of the insufficient record." *Hudspeth v. Astrue*, No. 4:09-CV-156-Y, 2010 WL 3033891, at *12 (N.D. Tex. July 2, 2010); *see Kane*, 731 F.2d at 1220. "To establish prejudice, a claimant must show that he 'could and would have adduced evidence that might have altered the result.'" *Brock*, 84 F.3d at 728 (citing *Kane*, 731 F.2d at 1220).

In this case, the evidence indicates that the ALJ did fully develop the record regarding Wilkins' fibromyalgia and its effect on her other impairments. To begin with, the ALJ found that Wilkins suffered from fibromyalgia and thoroughly and extensively discussed the evidence in the record relating to fibromyalgia. (Tr. 20-28.) The ALJ specifically stated that the "medical record indicates Ms. Wilkins has a long history of fibromyalgia and other impairments that have limited her functional ability, but the evidence does not show she has been as limited as she has alleged." (Tr. 22-23.) Contrary to Wilkins' assertions, the record indicates that the ALJ did appear to understand Wilkins' fibromyalgia condition and its effects on her other impairments.

Furthermore, even assuming that the ALJ had a duty to further develop the record, Wilkins has failed to demonstrate prejudice as she has presented no evidence, beyond her own speculation, suggesting that she would have or could have adduced evidence that would have altered the ALJ's decision. While Wilkins argues that the ALJ did not understand the interplay between Wilkins' physical and mental impairments and did not understand fibromyalgia, the record does not support such a claim. The ALJ, as made clear in his decision, was aware of Wilkins' physical and mental impairments as well as that she suffered from fibromyalgia. Furthermore, as discussed above, the ALJ took into account her limitations in dealing with stress by incorporating limitations regarding her ability to interact with others into the RFC determination. Consequently, the Court concludes that the ALJ did not err in failing to obtain an additional ME.

## **RECOMMENDATION**

It is recommended that the Commissioner's decision be affirmed.

## NOTICE OF RIGHT TO OBJECT TO PROPOSED FINDINGS, CONCLUSIONS AND RECOMMENDATION AND CONSEQUENCES OF FAILURE TO OBJECT

Under 28 U.S.C. § 636(b)(1), each party to this action has the right to serve and file specific written objections in the United States District Court to the United States Magistrate Judge's proposed findings, conclusions and recommendation within fourteen (14) days after the party has been served with a copy of this document. The United States District Judge need only make a *de novo* determination of those portions of the United States Magistrate Judge's proposed findings, conclusions and recommendation to which specific objection is timely made. *See* 28 U.S.C. § 636(b)(1). Failure to file, by the date stated above, a specific written objection to a proposed factual finding or legal conclusion will bar a party, except upon grounds of plain error or manifest injustice, from attacking on appeal any such proposed factual findings and legal conclusions accepted by the United States District Judge. *See Douglass v. United Services Auto Ass'n*, 79 F.3d 1415, 1428-29 (5th Cir. 1996) (en banc).

## ORDER

Under 28 U.S.C. § 636, it is hereby ORDERED that each party is granted until **April 11, 2011** to serve and file written objections to the United States Magistrate Judge's proposed findings, conclusions and recommendation. It is further ORDERED that if objections are filed and the opposing party chooses to file a response, the response shall be filed within seven (7) days of the filing date of the objections.

It is further ORDERED that the above-styled and numbered action, previously referred to the United States Magistrate Judge for findings, conclusions and recommendation, be and hereby is returned to the docket of the United States District Judge.

SIGNED:  March 28, 2011.

JEFFREY L. CURETON
UNITED STATES MAGISTRATE JUDGE